## REGLA *et al. v.* MARTIN.

PLAINTIFFS in 1859, as heirs of one Castro, filed their bill to set aside a decree obtained against them in 1853 by defendant, for the specific performance of a contract between him and their ancestor, Castro. The ground of this bill is fraud upon the part of Martin, in obtaining the decree and in the proceedings leading to it, and also other grounds applicable to three of the defendants, who were infants at the time of the decree : *Held*—the Court below having found the question of fraud in fact against plaintiffs—that the finding is conclusive of the case under the circumstances, especially as the matters relied on to establish fraud were mostly mere circumstances of suspicious or equivocal import, and no motion was made for new trial, on the ground that the finding was contrary to evidence.

*Held, further,* that the omission in the decree to give the infants a day in Court, after arriving at age, to show cause against the decree, is no ground of objection to it so far as the adults are concerned.

The mere omission, in a decree against minors, to give them a day in Court, after arriving at age, to show cause against the decree, does not make the decree fraudulent and void.

If the minors had right in law to contest the decree after reaching their majority, the omission in the decree to recite that right would not deprive them of it.

An infant, against whom a decree has been regularly rendered after service of process, has no peremptory right at any future time to file a bill and claim that the decree is void, and that all the matters of the original litigation shall be retried. And hence, where the infant files such bill to set aside the decree for fraud in fact in procuring it, and also for fraud because the decree does not reserve to the infant a day in Court, after coming of age, to contest it, and the Court below finds against the infant on his charge of fraud in fact, the finding will be conclusive on the whole case, unless there is a very clear mistake on the part of the Court below as to the fact of fraud.

The question whether minors are entitled, under our statute, to come in before or after arriving of age, and contest or show cause against an absolute decree against them, not decided.

APPEAL from the Third District.

Bill to set aside a decree for fraud.

Mariano Castro was the owner and in possession of the " Solis Rancho," situate in Santa Clara county. A negotiation for the sale and purchase of the land was had in November, 1845, between Mariano Castro and the defendant, Julius Martin. The price was fixed, but the trade was disturbed by a protest of Galen Castro, the brother of Mariano, who came in and claimed to be the owner of the land. Galen proposed to Mariano that both should join in

the conveyance to Martin and divide the price between them ; but Mariano declined, insisting that the land belonged to him.   Gilroy, then Alcalde of San Ysidro, by request of the parties, then drew what is termed the contract, a translation of which is as follows :

" Before me, in the year 1845, in the month of November, Judge of this San· Ysidro.

"A contract or sale was made between Mariano Macario (meaning Mariano Macario Castro) and F. J. Martin, of the rancho which formerly was owned by Joaquin Solis, near the *llagos*, and was as follows : For the sum of $1,000, one hundred dollars in money and nine hundred in goods, which was agreed to by each party ; whereas Galen Castro protested against the sale, and said that he was the owner of the rancho, and that said Mariano Castro or Macario had no right to sell the said rancho.   The said Martin wished to buy it for himself, and he sold it to him for the aforesaid sum ; then the two agreed to go and see who was the legitimate owner, and which of the two parties of the above contract could possess whenever he wished to go ;. and, therefore, I give this in this San Ysidro, this date.
(Signed.)       " JUAN GILROY."

Mariano and Galen each went off to get their title papers, and consented that Martin in the meantime might take possession of the rancho.   Gilroy gave the contract drawn by him to Martin.   A few days afterwards Galen brought his papers to Gilroy, who decided that they were not good, and so informed Martin, who thereupon declined to accept Galen's title.

Soon afterwards, Mariano brought his title papers.   Gilroy examined them, and told Martin the papers did not constitute a good title to the land.   Martin then declined to accept this title.

Before the contract was drawn, Martin paid Galen twenty-five dollars on account, but nothing to Mariano.   Both Mariano and Galen called for the money and goods (the price of the land) from time to time, but never got either or any portion of the same.

Martin did not take possession of the rancho.   Mariano continued to occupy the rancho up to the time of his death, about the year 1850, and his family remained in possession until 1852.   He left as heirs at law : his widow, Rufina Galindo de Castro, and his

children, Maria Antonia, Ignacio, José Maria, Maria Conception, Antonio, Jorge and Rosa, of whom the four last named were infants.

On the twenty-sixth of March, 1850, Martin filed his complaint to enforce the contract, and to compel a deed, to which Galen Castro and all the plaintiffs in the present suit were made parties, except José Maria Regla, F. A. McDougall and the three minor children of Juan Anzar, to wit: Francisco, Anatolia and Policinio— said Regla and McDougall having become interested in the estate by marriage since the decree in the former suit, and the three children of Anzar having been born since. Summons was issued on the twenty-seventh of August. The return of the Sheriff is: " Served by leaving a copy of this summons, also a copy of the complaint, at the last place of Galen Castro's abode for himself and each of the defendants, he and all the within named being absent from the county. August 30th, 1850." On the twenty-ninth of August, 1850, Galen Castro appeared without attorney, and files answer, admitting he executed the contract, the receipt of twenty-five dollars on account, and offers to make a deed, &c. On the nineteenth of September, 1850, a separate and final decree was entered against Galen Castro; requiring him to make a deed of the rancho to Martin in thirty days, allowing Martin to retain the money in his hands, subject to the order of the Court, and that plaintiff have leave to amend his complaint and issue alias process.

On the eleventh of January, 1851, the plaintiff, without amending his complaint or issuing any alias process, and without any further service of summons or notice, caused the default of all the other defendants to be entered; and on the eighteenth of the same month, a decree was entered against all, except Galen Castro, requiring them to make a deed of the premises to Martin within thirty days, Martin to pay into Court ———— dollars, subject to the order of the Court thereafter to be made determining to whom the money should go.

On the first of March following, upon the suggestion of certain attorneys that no legal service had been made, the decrees were vacated as to all defendants, except Galen Castro, and plaintiff ordered to take out alias summons. On the seventh of April, 1851, one Clarkson, at the request of Wattson, one of the attorneys of

Martin, took out letters of administration upon the estate of Mariano Castro, deceased.    Clarkson was not acquainted with any of the heirs of Mariano Castro, and knew nothing of the affairs of the estate.    The letters were granted without any actual notice to the heirs.    Clarkson was a friend to Martin, and became administrator to oblige him and his attorney.    On the first of May, 1851, Martin filed an amended complaint, setting out the death of Mariano Castro, the appointment of Clarkson as administrator, and praying that he be made a party.    Clarkson, on the thirtieth of April, 1851, indorsed thereon a waiver of service of process and of amended and original complaint.    June 3d, 1851, without further service of process, the defaults of Clarkson and Juan Anzar were entered. June 4th, 1851, Anzar and Clarkson filed separate demurrers and answers, setting up that the contract was never made ; and, if made, was void, and also the Statute of Limitations.    June 11th, 1851, Martin filed another amended complaint ; and on the seventeenth of June, 1851, on motion of plaintiff, the cause was dismissed as to all of the heirs of Mariano Castro, deceased, continuing the action against Clarkson, administrator, alone.

August 4th, 1851, Clarkson filed a demurrer on the grounds, mainly, that the contract set up did not entitle plaintiff to a decree ; that under it, plaintiff could not have specific performance until it had been adjudged who, whether Mariano or Galen, had title ; and that the land, on the death of Mariano, went to his heirs and not to the administrator.    Demurrer sustained on the twenty-seventh of October, 1851, with leave to plaintiff to amend, and directing that the heirs of Mariano be made parties.

Some time in 1851, Rufina, the widow of Mariano, intermarried with José Maria Regla ; and November 27th, plaintiff filed an amended complaint against Galen Castro, Clarkson, administrator, and all of the present plaintiffs, except F. A. McDougall and Francisco, Anatolia and Policinio, the children of Juan Anzar.

This complaint sets forth the alleged contract for the land, the payment by Martin, at the date of the contract, of twenty-five dollars to Galen Castro, and twenty-five dollars to Mariano as an earnest of the bargain, and a tender of the money and offer to perform the contract by Martin before suit brought.    Summons issued Decem-

ber 3d, 1851, and April, 1852, and served on all parties shortly after.

Nothing more was done in the cause until May 4th, 1853, when, upon motion of Martin's attorney, one Carolan Mathews, a farmer, not a lawyer, Martin's intimate friend and partner in the business of farming, and who was at that time heavily in debt to Martin, was appointed guardian *ad litem* for Jorge Castro, Antonio Castro, Maria Rosa Castro and Maria Conception Castro, who were represented to be under the age of fourteen years, though in fact Jorge Castro was fourteen years of age and José Antonio was over the age of fourteen. Mathews was neither a friend or relative of the infants.

July 18th, 1853, Mathews waived service of summons, filed answer of general denial, and stipulated with plaintiff to refer the cause to Frederick Hall, a friend of Martin, as referee, to try the case and report judgment. The other defendants had not answered, and did not answer.

Plaintiff's counsel appeared before the referee, and introduced as witnesses Gilroy and Galen Castro ; and also put in evidence the contract drawn up and signed by Gilroy—or rather, the memorandum of a contract. This was all the evidence, so far as appears, none of the defendants appearing by attorney or otherwise ; and on the twenty-second of July, the referee filed his report, finding the facts as alleged in the complaint, except as to the alleged payment of twenty-five dollars on account to Mariano, and the alleged tender or offer by Martin and demand for the deed. Upon the report, an absolute decree was entered July 30th, 1853, against all but Galen Castro for a specific performance, &c. The Clerk was made commissioner to make the deed, and Martin was required to pay $1,000 into Court, subject to further order. These constitute all of the papers, orders and proceedings in the cause.

The summons on the last amended complaint was served on Juan Anzar and Maria Antonio his wife in April, 1852 ; and in November, 1852, the said Juan Anzar died, leaving his widow, Maria, and the three infant children, Francisco, Anatolia and Policinio. No notice was taken of the death of Anzar, and no subsequent service was made upon his widow ; nor was any guardian appointed

for his children—the decree running against Juan Anzar as well as the other defendants.   Maria Antonio, about a year after the entry of the decree, became the wife of F. A. McDougall, and died in 1855.

When Gilroy was examined before Hall, the referee, and whilst testifying about Mariano Castro's returning with his title papers and exhibiting them to him, the Alcalde, in presence of Martin, and what he told Martin, and Martin's refusal to accept the title, the referee stopped the witness and said he did not want to hear anything upon that subject.

None of the defendants answered or participated in any of the proceedings, except Clarkson, Galen Castro and Juan Anzar, the latter of whom filed an answer and demurrer to one of plaintiff's amended complaints, as before stated.

The defendants have never called for the $1,000, which still remains in Court.

Plaintiffs here, heirs of Mariano Castro, of age, and, with the exceptions before named, defendants in the suit of Martin resulting in a decree for specific performance of the contract between him and Mariano Castro, deceased, now bring suit to set aside said decree.   The complaint sets out the foregoing facts, orders and proceedings *seriatim*, and charges, in substance, that all of Martin's proceedings from the beginning to the end of the suit were fraudulent, and designed to wrong plaintiffs here out of their inheritance. The main charges of fraud are, that Martin, after the death of Mariano Castro, conceived the design of defrauding the heirs of the Rancho through the memorandum of contract made by Gilroy; that for the purpose of carrying out this fraudulent design, he procured Clarkson to be appointed administrator of the estate, and began legal proceedings to compel him to execute a deed of the ranch; that failing in this he turned his case into a Bill of Equity against the heirs of the deceased for specific performance of the alleged contract of sale of the ranch, and in pursuance of his original fraudulent design procured the appointment of Mathews, a friend and partner, as guardian *ad litem*, with whom he arranged to have Hall made referee; that through this arrangement, as well as fraud practiced before the referee in the examination of witnesses, a re-

port was fraudulently obtained and also a decree of Court confirming it; that plaintiffs herewith were uneducated, native Californians, ignorant of the English language and laws and course of proceedings in the Courts of this State; that the appointment of Clarkson as administrator of the estate of Mariano Castro, deceased, and of Mathews as guardian *ad litem,* was without plaintiffs' knowledge or consent, etc.; and that they did not learn of these doings of Martin, nor these proceedings, until within a year before the commencement of this suit.

Defendant in his answer denies all fraud, and claims that all his proceedings were regular. The case was tried before the Court, and its findings negative the frauds alleged, and the bill was accordingly dismissed. The Court below, in a written opinion, puts the case entirely upon the question of fraud in fact; that is, fraud in the conduct of Martin in procuring his decree, holding that for errors of law in the proceedings in the first suit, or in the decree, the remedy, as the case stands, was by appeal, citing 19 How. 308. The complaint here does not allege the omission to give the infants a day in Court, after arriving at age, to show cause against the decree as a ground of fraud.

Plaintiffs appeal.

*McDougall & Sharp,* for Appellants.

I. There was fraud and deceit on the part of Martin in obtaining the decree.

1. The paper drawn by Gilroy, with the acts of the parties, did not constitute a contract for the sale of the land, all of which was known to Martin before and at the time of the commencement of the action. He had repudiated the contract before Gilroy as Alcalde, and refused to pay the price or to take the title of either Mariano or Galen Castro, after having them examined by the Alcalde. With a full knowledge of all the facts, it was fraud in Martin to commence or prosecute the action against any of the defendants therein, more especially so against the infants.

2. Procuring Clarkson to be appointed administrator, was fraudulent.

Clarkson was appointed by the procurement of Wattson, attorney

for Martin.   He was not related to or even acquainted with the deceased, or any of his family.   Not Public Administrator or a creditor—an entire stranger to the deceased, his family and estate, but very friendly to Martin.

3. Procuring the appointment of Carolan Mathews, as guardian *ad litem* for the infants—Jorge, Antonio, Maria Rosa and Maria Conception—was fraudulent and collusive.   Mathews was not related to or connected with the infants or minors; was no lawyer, but was the intimate friend of Martin, and, at that time, his partner in business; under his control and heavily in debt to him, and appointed on motion of Martin.   His acts show his readiness to facilitate Martin's purposes.   He waives process, appears and answers without attorney, on same day, July 18th, 1853, consents to a reference and immediate trial without preparation or any consultation whatever with the minors or their friends, and submits without objection to the decree.

4. Procuring the appointment of Hall as referee was fraudulent.   Hall was particularly friendly to Martin; would not allow Gilroy, Martin's own witness, to state the whole truth of the transaction, but would only listen to what did not militate against Martin's interest.   Hall also allows Galen Castro to be examined, although claiming adversely to the other defendants.

5. Galen Castro was a confederate of Martin's, appears without attorney and admits every allegation in the complaint.

6. It was fraud to take a decree absolute against the infants without giving them time to show cause against the decree after they became of age, or a day in Court.   (Story's Eq. Pl. sec. 405, and authorities there cited.)

II.   The decree and proceedings are irregular and erroneous upon their face, and even though the Court should be of opinion there was no fraud on the part of Martin, still the plaintiffs, and especially the infants, can avail themselves of it in this action.

1. The Court below erred in vacating the decree caused to be entered by the plaintiffs on the eighteenth of January, 1851, which was done after the term expired and without any motion for a new trial, but simply upon suggestion of certain attorneys who were strangers to the record.

Regla *v.* Martin.

2. Carolan Mathews was not regularly appointed guardian *ad litem* of the infants—Jorge, Antonio, Maria Rosa and Maria Conception—having been appointed upon simple motion of plaintiff's attorneys, whereas application should have been made upon petition in writing under oath, so that the facts should be before the Court in some tangible form. The motion was made without notice to the infants, or their friends and relatives, and the facts are falsely recited in the order of appointment, and it no where appears who made the representations to the Court. (Story's Eq. Pl. sec. 70, and authorities there cited.)

3. The complaint in this cause shows all the proceedings in the former action, which the answer admits. On motion of attorneys of Martin, Mathews consenting, without taking any default against the other defendants, the cause was on the eighteenth of July, 1853, referred to Hall, the cause being one the Court could not, under the statute, refer on its own motion. No default being entered against appellants, it was erroneous to order a reference without the consent of the other defendants. Their nonappearance may have waived a jury trial, but not a trial by the Court.

4. It was fatally erroneous as against the infants to order a reference in the cause upon the consent of Carolan Mathews. A guardian *ad litem* has no power to waive any right on the part of the infants. Nor had the Court any power to order a reference as against the minors. (*Savage* v. *Carrol*, Ball & B. 548, 553.)

5. The decree was fatally erroneous in having been made absolute against the infants without giving them a day to show cause against it after they became of age, and conclusive of fraud against them, of which they can take advantage by original bill after they come of age. (*Beeler* v. *Bullett*, 4 Bibb. 11, 96; *Sheild* v. *Bryant*, 3 Id. 525; *Passmore* v. *Moore*, 1 J. J. Marshall, 591; *Jones* v. *Adhir*, 4 Id. 220; *Arnold* v. *Voorhies*, 4 A. J. Marshall, 507; *Harris* v. *Youman*, 1 Hoff. Ch. 178; *Wilkinson* v. *Oliver*, 4 Hen. & M. [Va.] 450; *Whitney* v. *Stearns*, 11 Met. 319; *Coffin* v. *Heath*, 6 Id. 76; *Savage* v. *Carrol*, 1 Ball & B. 551.) In decree for specific performance of contract of ancestor, infant allowed six months, etc. (*Glaze* v. *Dayton*, 1 Desauss. 109; *Wilkinson* v. *Wilkinson*, 1 Id. 201; *Petitzan* v. *Ritall*, 3 Harris & John. 77;

*Bunsley* v. *Powell,* 1 Vesey, Sr. 119, 284–289; *Richmond* v. *Taylor,* 1 Pierre, Wm. 734; *Rice* v. *Carver,* 3 Mylne & Craig. 161; *Pope* v. *Lancaster,* 5 Litt. 77; *Napier* v. *Effingham,* 2 Pierre, Wm.; Id. 120; 2 Hoff. Ch. Pr. 205 and cases.)

6. The decree was erroneous as against Juan Anzar, who died eight months previous to the decree; also as against Maria Antonia Anzar, who was served some six months before the death of her husband, but not after she became discovert.

III.    The right to impeach a judgment for fraud is unquestionable. (1 Story's Eq. Juris. sec. 252; 1 Madd. Ch. Pr. 236–7; Comyn Dig. Ch. 3 m, 1–3 n, 1–3 w.)

IV.    If the decree of July 30th, 1853, should be held void at the suit of one or more of plaintiffs for fraud on the part of Martin, it must be held void as against all the plaintiffs; even those, if any, who cannot set up the fraud. The decree is an entirety; and void as to one, it is void as to all. Fraud vitiates the entire thing. There is no exception to this rule. (*Montgomery* v. *Brown,* 2 Gilman, 581; 8 Johns. 111, 558; 12 Id. 540, 434; *Arnold* v. *Duncan,* 13 Id. 460; 14 Id. 417; *Van Bokelin* v. *Ingersoll,* 5 Wend. 315–341; Story's Eq. Pl. secs. 74 a, 76 b, 76 c and note, 224; 2 Danl's Ch. Pr. 284, 392; Cooper's Eq. Pl. 32, 34; 2 Lord Ray. 893, 1534; Str. 188.)

V.    The minor heirs may assign the fraud and attack the decree in a new action, whether parties to the original action or not. (*Joyce* v. *Joyce,* 5 Cal. 161, and authorities above cited.)

VI.    This is not a bill of review, but an original bill in the nature of a bill of review to set aside a decree of fraud. (*Stanford* v. *Head,* 5 Cal. 297, 298; *Joyce* v. *Joyce,* Id. 161: Story's Eq. Pl. secs. 426, 421 and note; *Wright* v. *Miller,* 1 Sandf. Ch. 120; *Reigal* v. *Wood,* 1 Johns. Ch. 401; *Carneal* v. *Wilson,* 3 Litt. 90.)

*Wm. T. Wallace,* for Respondent.

I.    In answer to that portion of appellants' brief which raises the charge of fraud in fact in Martin, in obtaining the decree in the suit of *Martin* v. *Castro,* we say: 1. If this Court were to look into the evidence, it would find an utter absence of anything tending to fraud in Martin or any one else, in the proceedings in re-

Regla v. Martin.

lation to that decree.    2. The Court will not look into the evidence for the purpose of seeing if fraud were proved or not, because the Court below found as a matter of fact that there was no fraud, and the appellants acquiesced in that finding, made no motion for a new trial, and are therefore concluded.    (*Gagliardo* v. *Hoberlin*, 18 Cal.)

II.    It being established, that the decree in the old suit of *Martin* v. *Regla et als.* was not fraudulent in fact, the question now for the first time made (*i. e.*, as to the form of the decree in question in not giving the infant defendants a day after coming of age to show cause against the decree) cannot affect the result of the suit. These infants have now, at all events, taken their day in Court for the purpose of assailing the decree. They did not assail the decree in question on the ground of mere form in not giving day to the infants.    The whole question made by them below was as to the fraud in fact, which they charged Martin to have used to obtain his decree in 1853.    The question of the form of the decree cannot be considered.    (*Morgan* v. *Hugg*, 5 Cal. 410.)

III.    There were but three infants who were defendants in the decree in question, and eight adults.    These eight defendants, who submitted to and acquiesced in the decree for years, are not protected by the form of the decree ; there is no law to show that the decree in question ought, in form or otherwise, to have given these eight adults day to show cause against the decree.    Had the decree given them day to show cause against it, Martin could have appealed and reversed the decree on that ground.    The decree is right, then, in form as to them ; in its substance, it is shown by the finding and decree of the Court below to have been fairly obtained ; and being, as to these adults, the decree of a Court of competent jurisdiction fairly obtained, never appealed from until now, it has become by lapse of time purged of any mere errors of law which might have intervened in its rendition.    The appellants' counsel holds that the decree could not be opened as to the three infants without opening it altogether, and for the benefit of all the defendants ; but in this he is mistaken.    True, if fraud in fact had been established, that result might have followed, and the decree be worthless for any purpose in the hands of Martin, who was guilty of the fraud ; but

31

Regla *v.* Martin.

here it is established that the decree was fairly obtained; and to this decree, fairly obtained, the infants set up a defense purely personal to themselves.    Even at law, such a defense did not affect the condition of an adult codefendant.    If two were sued *ex contractu*, and one pleaded his infancy and succeeded, this did not discharge the other; but as to him, the action would proceed. (*Hartness* v. *Thompson*, 5 Johns. 162, and the numerous authorities there cited; *French* v. *Shotwell*, 5 Johns. Ch. R. 565; 1 Meigs, 613, cited in 2 U. S. Dig. 163, sec. 139; *Downey* v. *Collins*, 2 B. Monr. 95.)

But by our law, an infant has no right to a day in Court to show cause against a decree; and a decree may rightfully be entered against the infant absolutely in the first instance.    Our code in 1853—the law in force when the decree was made—contained full directions as to the method of service upon an infant, the appointment of a guardian *ad litem*, &c.    Nothing is said whatever as to any judgment or decree not being as effectual against him as against any one else.    By the sixty-eighth section of that act the Court was authorized, upon certain specified grounds, to allow a defendant, against whom judgment had been rendered, to answer within six months to the merits of the original action. The infancy of the defendant was not one of the grounds.    On the contrary, in no case could the defendant be allowed this six months if personal service of the summons had been made; and personal service of the summons was required by law to be made upon infants. (Pr. Act of 1851, sec. 29.)

But even if the infants have such day as claimed for them, they having now, since they attained their majority, filed this bill in which they associate the eight adult defendants with them as cocomplainants, must in this decree fail or succeed only as the adults may fail or succeed.    (*Reden* v. *Trim*, 3 Murphy, N. C.; *Keeton's Heirs* v. *Keeton's Adm'rs*, 20 Mo. 544.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J concurring.

This was a bill, filed by the heirs of one Castro, to set aside a decree obtained against them in 1853, by defendant, for the specific

Regla *v.* Martin.

performance of a contract between himself and their ancestor. Martin obtained a decree after certain proceedings, which are set out in the bill.   The ground upon which this bill proceeds, is fraud upon the part of Martin in obtaining the decree, and in the proceedings leading to it, and also other grounds applicable to three of the defendants, who were infants at the time of Martin's decree. The question of fraud in fact was tried by the Court below, and the finding is against the charge.

1. This finding, under the circumstances, is conclusive.   A very clear case of mistake on the part of the Court below must be shown, upon an issue of fact, to induce us to interfere with the conclusions of the Judge trying the case and hearing the testimony.   The matters relied on by the appellants to establish the fraud are mostly, if not entirely, mere circumstances of suspicious or equivocal import, and to which we could not attach, even if unexplaned, conclusive effect.   Besides, it seems no motion was made for a new trial upon the ground that the finding was contrary to the evidence.

2. It is urged that the decree in the case of *Martin* v. *Castro's Heirs* does not give a day to the infants, after arriving at age, to show cause against the decree, and that this omission makes it fraudulent.   This position is untenable.   It would not be any ground of objection to the decree, so far as the adults are concerned, that this omission occurred as to the minors.   The minors either were or were not entitled by law to this privilege ; if entitled, the omission to recite it in the decree would not deprive them of it ; if not entitled, no injury was done by the omission.   But in no event could a mere irregularity or omission of this sort in a decree be construed as a fraud, or as conclusive evidence of a fraud, annulling the decree ; for if this were so, it is impossible to see why any other irregularity or error would not avoid a judgment for this cause, and thus appeals would become useless.

3. It is scarcely necessary for a decision in this case to consider whether these minor heirs were entitled, under our statute, to come in before or after arriving of age, and contest the decree, or show cause against it ; for it seems that in this very case, they have availed themselves of their asserted right ; that they have in this proceed-

ing assailed this decree—for fraud, among other things—and that the charge has been found against them. It can scarcely be contended that an infant, against whom a decree has been regularly rendered after service of process, etc., has a peremptory right at any future time to claim that the decree is to be held for naught, and that at his mere option all the matters of the original litigation shall be retried.

It is not necessary to notice the other points.

Judgment affirmed.