## AUGUSTA JOYCE *v.* WILLIAM McAVOY *et als.*

SUIT AGAINST INFANT "HEIR" AT COMMON LAW.—At common law, when the infant heir was sued upon a *specialty obligation* of the ancestor chargeable upon the inheritance, he might pray that the proceedings be stayed until he should attain his majority. This privilege was confined to the heir alone, and did not extend to devisees.

SUIT AGAINST INFANT "HEIR" IN COURTS OF EQUITY.—Courts of equity, in cases where the equity depended upon the liability of the heir to pay out of the descended assets, adopted a similar practice; and in a certain class of cases

affecting the title of infants to real estate, by a kind of analogy to this practice, Courts of equity adopted another rule, by which a clause was inserted in the decree giving the infant a day after becoming of age to show cause against it.

OUR PRACTICE IN SUITS AGAINST HEIRS.—It is at least questionable whether under our system of practice an infant is in any case or under any circumstances entitled to have a day given in the judgment to show cause against it.

JUDGMENT AGAINST INFANT.—An infant defendant is as much bound by a decree in equity as a person of full age, and will not be permitted to dispute it except upon the same grounds as an adult might have disputed it, such as fraud, collusion, or error. If merely erroneous, it is not void, but may be corrected on appeal. If fraudulent, or obtained by collusion, it must be attacked in a direct proceeding, and cannot be attacked collaterally.

WHEN DECREE AGAINST INFANT NOT VOID.—A judgment in equity against an infant, where the Court has jurisdiction, which does not give the infant a day after arriving at age to show cause against it is not void, and cannot be attacked collaterally.

ACTION AGAINST INFANT TO DETERMINE ADVERSE CLAIM.—A covenant in a deed of separation between husband and wife having two infant children, which provides that the wife will hold land then owned by her for the joint benefit of herself and children, and will convey one third of the land to each of the children when they shall come of age, gives the infants such a basis of claim to the land as they are bound to set up and have adjudicated in an action brought against them to determine an adverse claim.

DECREE AGAINST INFANT IN ACTION TO DETERMINE ADVERSE CLAIM.—A judgment against an infant in an action to determine an adverse claim to real estate, which does not give the infant a day to show cause against the judgment after he comes of age, is not for that reason void, and cannot be collaterally impeached in an action to recover possession of the land after the infant comes of age.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Plaintiff recovered judgment in the Court below, and defendants appealed.

The other facts are stated in the opinion of the Court.

_Patterson, Wallace & Stow_, for Appellants. If the deed of separation between Joyce and wife conveyed to the plaintiff any interest in the property, the judgment of Lake in _Lake_ v. _Joyce et al._ divested it. It is asserted by respondents that an action to determine an adverse claim cannot be brought against an infant. The language of the two hundred and fifty-fourth section of the Practice Act is general and comprehensive, and makes no exception in favor of infants, and allows any person " in possession " to bring the action against any person who claims an estate or " interest " adverse to him.

(*Merced Mining Company* v. *Fremont*, 7 Cal. 130 ; *Curtis* v. *Sutter*, 15 Cal. 261 ; and *Head* v. *Fordyce*, 17 Cal. 151.)    The only remedies that an infant has against the adverse decree of a Court of original jurisdiction, is either : 1. An appeal to the Supreme Court ; 2. An original bill ; 3. A bill of review. (*Ralston* v. *Lahee*, 8 Clarke, Iowa, 17 ; 1 Daniell Ch'y Plead. and Prac. 210–11, 205–6 marginal ; *Richmond* v. *Taylor*, 1 P. Wms. 734.)    If the plaintiff could attack the decree in favor of Lake, she should have assailed it directly and not collaterally.

*James C. Cary*, for Respondent.    The decree in *Lake* v. *Joyce et al.* does not bar plaintiff of her right.    No decree can be made against an infant without having a day given him to show cause after he comes of age, and is of no force against him unless made absolute after he has failed to show cause. (2 Mad. Ch. Prac. 352 ; Story Eq. Pl., Sec. 72 ; *Coffin* v. *Heath*, 6 Met. 81, and cases there ; *Whitney* v. *Stearns*, 11 Id. 319.) At the time the decree was rendered, plaintiff had no present vested interest in the property, nor did she have any until she attained her majority.    The legal title was not vested in her until the deed of John and Caroline Joyce was delivered. This was long after the decree was rendered.    The deed of separation did not create a present interest in plaintiff.    (1 Sharswood's Blackstone, B. II, p. 513 ; 1 Hare, 10 ; *Hanson* v. *Graham*, 6 Vesey, Jr. 239.)    The decree cannot bar a future interest which the defendant in the action might acquire. A decree is never conclusive of an after acquired title.    (*Lewis* v. *Smith*, 5 Selden, 516 ; *Clark* v. *Baker*, 14 Cal. 626.)    Judgments do not bind after acquired rights of parties.    Plaintiff had no interest in the property which she could have asserted when the judgment was rendered.    A decree in an action to determine an adverse claim only binds those who are in a condition to assert their claim.    (*Van Winkle* v. *Van Winkle*, 21 Cal. 343 ; Practice Act, Sec. 254 ; 7 Cal. 318.)

*Joseph H. More*, also for Respondent, confined his argument to points not mentioned in the opinion of the Court.

By the Court, SAWYER, J.:

This is an action to recover a lot in San Francisco. On the 27th day of January, 1847, one John Joyce, father of the plaintiff, became the owner in fee of the premises in controversy by virtue of a grant made by Alcalde Bartlett. At that time, Joyce was a married man, living with his family, consisting of a wife, Caroline A. Joyce, and two infant daughters, Augusta Joyce, the plaintiff, and Helen Frances Joyce. In March, 1851, Joyce and wife conveyed the fifty-vara lot, of which the said premises are a part, to one E. V. Joyce, upon a consideration of six thousand dollars expressed in the deed. In July, 1851, said E. V. Joyce, without the knowledge or consent of said John Joyce, reconveyed said lot to the wife, Caroline A. Joyce, also upon a consideration expressed in the deed of six thousand dollars. On the 24th of February, 1852, said John and Caroline A. Joyce, without any trustee, entered into an agreement, under seal, for a separation, which agreement contains the following covenants, namely : on the part of said John Joyce—" That he will not at any time hereafter claim or demand any of the moneys, jewels, clothes, household goods, stock in trade, real estate or property, of any name or nature, which she [Caroline A. Joyce] now has in her custody or possession, or which she hereafter may acquire by purchase, gift, devise, descent, or otherwise ; and that she shall and may enjoy and dispose of the same in all respects as if she were a *feme sole* and unmarried. And the said Caroline A. Joyce, in consideration of the premises, hereby covenants and agrees to and with the said John Joyce that she will make no claim on him for the support of herself and children, but that she will now, and at all times hereafter, hold him harmless on account thereof; that she will hold the lot now owned by her on Stockton street for the joint benefit of herself and children, using only the rents, issues and profits thereof for the benefit of herself and children ; and that she will convey one third of the said lot to each of the said children—Augusta and Helen Frances—when they shall respectively become of age."

Afterward, various proceedings were had, among which was an action by the wife, Caroline A., against her husband, John Joyce, and the said two infant children, to have said property adjudged to be the separate property of the said Caroline A. Joyce, and a judgment therein in accordance with the prayer of the complaint; a mortgage of said premises by Caroline A. Joyce to one Williams, executed by John M. Horner, her attorney in fact; a foreclosure of said mortgage, and a sale, and delivery of Sheriff's deed thereunder, in 1856, to said Williams, the mortgagee and plaintiff in said foreclosure suit. Every step in all of the numerous proceedings subsequent to said conveyance from E. V. Joyce to Caroline A. Joyce is claimed to be irregular and void by one side or the other; but, upon the view we take, it will be unnecessary to refer more particularly to the multitude of alleged defects.

On the 13th of October, 1861, whatever interest said Williams acquired in the south half of the fifty-vara lot, embracing the *locus in quo*, by virtue of his purchase under the decree of foreclosure, had, by sundry conveyances, became vested in one Lake, who went into the possession of said premises. On said last named day, said Lake commenced an action, in pursuance of section two hundred fifty-four of the Practice Act, against said John Joyce, Caroline A. Joyce, Augusta Joyce and Helen Frances Joyce, to quiet his title to the premises in question. The complaint was in the usual form in such cases, averring title and possession in the plaintiff, and that the defendants claimed some estate or interest adverse to him. Such proceedings were thereupon had, that, on the 18th day of March, 1861, it was adjudged that the title of the said Lake to the demanded premises was good and valid, and that the claim, or title of said defendants, was invalid and void. The plaintiff at the date of the judgment was still an infant. The judgment was absolute, and gave her no day to show cause against the finding after becoming of age. Afterwards, on the first day of May, 1861, said Lake, being then in possession, conveyed the premises to defendant, McAvoy, who paid therefor the sum of five thousand five hundred dollars.

The other defendants are tenants of McAvoy. The plaintiff, Augusta Joyce, attained her majority on the 8th of October, 1862, and brought this suit on the 9th of June, 1863. At the time the suit was instituted she had no title except such as she acquired by virtue of the covenants, before cited, in the deed of separation between her father and mother, John and Caroline A. Joyce. But since the commencement of this suit, to wit: on the 21st of April, 1864, the said John and Caroline A. Joyce, "in consideration of the covenants contained in said deed of separation, and for the purpose of carrying out its object and intent," have conveyed said demanded premises to the plaintiff; and it was stipulated that said conveyance should be read in evidence with like force and effect as if it had been executed and delivered prior to the commencement of the action.

If the judgment in the case of *Lake* v. *Joyce et al.*, to quiet title, is in all respects a valid judgment, and cannot be avoided by the plaintiff, the question as to plaintiff's title at that time is *res adjudicata* between these parties, and that ends the contest; for the whole object of that suit was to determine whether the defendants in that suit, including the present plaintiff, had any just claim or title; and that was the very matter in issue, and determined.

It is not pretended that the judgment in that case was not, in all respects, regular and valid as to the adult defendants, and binding upon any title or interest which they personally had. And there are but two grounds upon which it is claimed that the proceedings and judgment are irregular and void as to plaintiff. These are:

Firstly—That no valid judgment can be rendered against an infant, without giving him, in the judgment, a day to show cause against the judgment after he comes of age; and that a judgment is of no force against him unless made absolute after he has failed to show good cause.

Secondly—That at the time these proceedings were had, the plaintiff had no present vested right, title, estate or interest in the premises—that her right accrued subsequent to the

judgment, when she attained her majority in October, 1862, and was not affected by it.

At common law, when the heir was sued at law, upon *a specialty obligation* of the ancestor *chargeable upon the inheritance*, he might pray that " the parol demur "—that is to say, that the pleadings· or proceedings be stayed till he should attain his majority.    This privilege was based on feudal reasons, and was confined to heirs.    It did not even extend to devisees.    Says Lord Ellenborough, C. J., in *Plasket* v. *Beeby*, 4 East. 490 : " The privilege of the heir himself in this respect is anomalous, and confined to the heir alone.    It is not necessary upon this occasion to enter into the history of it further than to observe that the privilege given to the infant heir to make the parol demur till he was of full age, was not merely on account of his inability to defend himself by reason of his infancy, but from an absolute deficiency of funds arising out of the nature of the feudal tenures.    For during the subsistence of wardships, the estate of the heir in chivalry was, during his minority, in the hands of the guardian in chivalry, who had the whole profits of it. How the privilege came to be extended at common law to other heirs is lost in antiquity.    It is enough to say that it is an anomaly in the law, and confined to heirs ; and not having been communicated by the statute of W. and M. to the devisee in whose hands the real property of the testator is made chargeable, the devisee must be liable notwithstanding his nonage, and cannot bring to himself, *aliunde* the statute, a peculiar privilege given to the heir by common law."    So also, Courts of equity, following the example of Courts of law, in cases where the equity depended upon the liability of the heir to pay out of the descended assets, adopted a similar practice.    " Courts of equity did not, however, confine this species of protection to cases precisely similar to those in which the parol could demur at law ; but by a kind of analogy they adopted a second rule by which, in cases of foreclosure and partition, and in all such cases in which the real estate of an infant was to be sold or conveyed under a decree of the

Court, and, consequently, the execution of the conveyance was necessarily deferred, the infant had an opportunity, after attaining twenty-one, to show cause against the decree. For this purpose a provision was inserted in the decree, giving the infant a day to show cause against the decree." (1 Dan. Ch. 206–7; 2 Kent Com. 245.) It has been held in some cases that the infant is not entitled to a day to show cause unless he is required to do something—as, for example, to make a conveyance. Thus, in *Wilkinson* v. *Oliver*, 4 Hen. and Mun. 450, it was held that, although an infant is entitled to six months to show cause, when he is required to do an act, yet, " when lands are decreed to be sold for the payment of debts, there is no necessity to allow a day, unless he is decreed to join in the conveyance, as the Commissioner of Sale will execute the deed. (See, also, 2 Kent Com. 245, and cases cited in note *e*.) In discussing this question, however, after citing and commenting on the numerous cases, the Assistant Vice Chancellor, in *Harris* v. *Yeoman*, 1 Hoff. Ch. R. 182, says: " It appears to me as the result of these authorities that, in England, independent of statutory provisions, the rule generally is, that wherever the *inheritance of* an infant is bound by the decree, there must be a day given him to show cause, whether a conveyance is decreed or not." But, it would seem, that this is required only in those cases where the decree affects the inheritance, and seeks to transfer, or cut off in some mode, the title of the infant to lands descended. At all events, no case has been brought to our notice affecting the rights of infants in other respects, in which a day is required to be given in the decree. In the case of *Chaplin* v. *Chaplin*, 3 P. Williams, 368, the question arose whether the parol should demur during the infancy of the son, where a leasehold estate for three lives made to the father came to the son on the death of the father. Lord Chancellor Talbot held that it should not—" that in the case of lands in fee descending on an infant, the parol shall demur in equity as well as at law; because the infant is equally incapable of defending himself in one Court as in the other; and the equitable assets

may be of as great value as the legal; but where a lease is made to a man and his heirs during three lives, the heir does not take by descent, but as a special occupant, and such special occupancy was not liable to pay debts, until the Statute of Frauds made it assets; and though it be called a descendable freehold, it is not really a descent, being no more than if there had been a designation of any other person by name to enjoy the estate for three lives, after the death of the father, instead of the heir at law." If the rule relied on by appellant only applies to lands cast upon the infant by descent, or if it only applies to cases where he is required to do something, or some change is sought to be wrought upon the title, as to cut off an equity of redemption, compel a conveyance, effect a partition, by which the estate is transferred from an undivided interest in the whole, to a several interest in some specific part, and the like, then it has no application whatever to the case under consideration; for there was no descent cast, and the interest of the plaintiff, whatever it was, if she had any, arose out of, and depended wholly upon, the deed of separation before mentioned. And in the suit of *Lake v. Joyce and others*, the plaintiff did not seek, nor did the judgment purport to change or affect the title. The theory of the action was, that the defendants had no title or interest or valid claim of any sort whatever in the premises, and it was so adjudged. The judgment did not purport to operate upon, or in any manner change the title, but only to determine where the title was;—that the defendants had nothing to be affected. So, again, it may be a question whether, under our statutory system of practice, the rule is applicable at all. As before seen, it was founded upon reasons growing out of feudal tenures, and afterwards extended to inheritances under other tenures, as Lord Chancellor Ellenborough seems to think, without any good reason, in some mode unaccountable to the English Judges. The rule remained in England and the older States, greatly modified by statutory provision, however, long after the policy upon which it was founded became

36

*obsolete.* And now, in accordance with the exigencies of modern ideas, the parol demurrer upon which the equity practice was founded has been abolished by statute in England, New York, and probably other States where it prevailed. (Wharton's Law Dic. 558, Art. Parol Demurrer; 2 Kent's Com. 245, note *b*.) The principle of public policy upon which the rule was based never did exist in this State, and the rule itself, if it exists at all under our Practice Act, rests upon the statute adopting the common law as the rule of decision, where it is not otherwise provided. It would be strange indeed, in this commercial age, in a new State like California, where real estate is treated to a great extent as an article of commerce, and as few impediments thrown in the way of alienation as is compatible with security to titles, if a law should be long tolerated which would for twenty-one years debar a party from effectually enforcing a claim or lien against land, because his adversary happens to die, and the descent is cast upon issue, perhaps yet unborn.

But, upon the view we take, it will be unnecessary in this case to decide either of these questions, and they have only been alluded to because the counsel of the appellants assume in this case, as it has been before assumed by counsel in other arguments in this Court, that in all cases a judgment against an infant, as well in this State, under our system of practice, as in England and the older States, under the old chancery system, must give a day to show cause after he comes of age before it can be made absolute; and with the hope that, when the question does necessarily arise, it may be fully investigated; and if the rule is found to exist, that its limits and proper application may be accurately ascertained.

Conceding, for the purposes of our decision, that the rule exists under our system of practice, and that it is strictly applicable to the cause of action disclosed in the case of *Lake v. Joyce et al.*, it is one thing to attack the judgment on appeal, or by some direct proceeding known to the law to vacate it, and quite another to attack it collaterally, when it

comes up as evidence in another action, as is sought to be done in this case.

If the infant is entitled under the law to have a day given in the judgment, and the judgment is absolute, giving no day, it is erroneous, and will be reversed or modified on appeal; or if properly attacked by a direct proceeding, will be vacated for the error and irregularity. But no case has been called to our attention which holds the judgment to be a nullity on its face. It is only voidable—not void. It is valid until reversed or set aside. Says Daniell : " An infant defendant is as much bound by a decree in equity as a person of full age ; therefore, if there be an absolute decree made against a defendant who is under age, he will not be permitted to dispute it, unless upon the same grounds as an adult might have disputed it, such as fraud, collusion or error." (Dan. Ch. Pr. 205 ; see, also, *Ralston* v. *Lahee*, 8 Iowa, 23.) Daniell then shows the proper mode of impeaching a decree upon any sufficient ground, including error or irregularity in entering it without giving a day, in those cases in which the infant is entitled to it, to be by bill of review, supplemental bill or original bill. He further says : " The insertion of this clause (giving day) in a decree for a conveyance by an infant of his estate, was so strictly insisted upon in all cases that the omission of it has been considered as error in the decree." (Ib. 207 ; *Richmond* v. *Tayleur*, 1 P. Williams, 737.) The omission, then, makes it erroneous, not void. In *Bennett* v. *Hamill*, 2 Scho. & Lef. 575, a sale had been made of the estate of an infant heir, under a decree which did not give a day to show cause, and one Hart, a stranger to the record, was the purchaser. The heir, on coming of age, filed his bill to vacate the decree on that ground, and the further ground of fraud, which vitiated the whole proceedings, and to procure a reconveyance of the land. The Lord Chancellor, in deciding the case, said : " First of all, it is stated that this is a case in which the heir of the debtor, as not being of age, ought to have a day to show cause against the decree ; and for *this reason, that the decree necessa rily required his joining in the conveyance of the estate.*

incline to think that that was so; that the decree in that
respect was erroneous; and that there ought to have been a
day to show cause." (Ib. 576.) * * * "But as to Hart's
representatives and Hamill, the question is, whether they are
persons who can be affected, supposing the circumstances to
be clearly true as stated, namely: that there was error in the
judgment of the Court in not giving a day to show cause;
and error also in directing a sale under the circumstances.
Now on that subject I must confess, after considering this a
good deal, I think it would be too much to say that a pur-
chaser, under a decree of that description, can be bound to
look into all these circumstances; if he is, he must go through
all the proceedings from the beginning to the end, and have
the opinion of the Court that the decree is right in all its
parts, and that it would be impossible to alter it in any
respect. The cases warrant no such opinion. On the con-
trary, as far as I can find, the general impression they give is
that the purchaser has a right to presume that the Court has
taken the steps necessary to investigate the rights of the par-
ties, and that it has on that investigation properly decreed a
sale; then he is to see that this is a decree binding the parties
claiming the estate; that is, to see that all proper parties to
be bound are before the Court; and he has further to see
that, taking the conveyance, he takes a title that cannot be
impeached *aliunde*. He has no right to call upon the Court
to protect him from a title not in issue in the cause and no
way affected by the decree; but if he gets a proper convey-
ance of the estate, so that no person whom the decree affects
can invalidate his title, although the decree may be erroneous,
and therefore to be reversed, I think the title to the purchase
ought not to be invalidated. If we go beyond this, we shall
introduce doubts on sales, under the authority of the Court,
which would be highly mischievous." (Ib. 577; see, also,
Dan. Ch. Pr. 213; McPherson on Infants, 431.) The bill was
dismissed as to the purchaser, Hart, and those claiming under
him, while it was retained as to the original parties to the
decree sought to be vacated. Thus it will be seen, that, even

on a direct proceeding by bill to impeach the decree, while it was held to be erroneous, it was held to be valid as to the purchaser. It was held " that a purchaser has a right to presume that the Court has taken the steps necessary to investigate the rights of the parties, and that it has, on that investigation, decreed a sale; then he is to see that this is a decree binding the parties claiming the estate—that is, to see that all parties to be bound are before the Court." McAvoy is strictly within the rule here laid down, even if the decree in *Lake* v. *Joyce et al.* had been attacked in a direct proceeding. For Lake, procured an adjudication that plaintiff had no title, and quieting his own title. McAvoy, on the faith of that judgment, purchased from Lake for the full value of the property. He knew, it is true, of the existence of the deed of separation between John Joyce and wife, but he also knew that in an action to determine whether any valid title or interest existed under that instrument, in which all the parties in interest were before the Court, there had been a judicial investigation, and a judgment against the claim. But it is unnecessary to go so far. The Court had jurisdiction of the subject matter and of the persons of all the parties in interest, and having jurisdiction as before shown, its determination was only erroneous and voidable—not void. It was also so directly held in *Porter's Heirs* v. *Robinson*, 3 A. K. Marsh. 254, a case in which no guardian *ad litem* was appointed, and in which the decree gave the infants no day to show cause. That the judgment is valid until reversed was, we think, substantially decided in *Regla* v. *Martin*, 19 Cal. 475. This was a direct proceeding by an original action to impeach a prior judgment for fraud. The Court say : " It is urged that the decree in the case of *Martin* v. *Castro's Heirs* does not give a day to the infants, after arriving at age, to show cause against the decree, and that this omission makes it fraudulent. This position is untenable. It would not be any ground of objection to the decree, so far as the adults are concerned, that this omission occurred as to the minors. The minors either were or were not entitled to this privilege; if entitled, the omission to recite it in

the decree would not deprive them of it; if not entitled, no injury was done by the omission. But in no event could a mere irregularity or omission of this sort in a decree be construed as fraud, or as conclusive evidence of a fraud, annulling the decree; for if this were so, it is impossible to see why any other irregularity or error would not avoid a judgment for this cause, and thus appeals would become useless. * * * It can scarcely be contended that an infant against whom a decree has been regularly rendered after service of process, etc., has a peremptory right at any future time to claim that the decree is to be held for naught, and that at his mere option all the matters of the original litigation shall be retried."

It is a general principle of law well established, applicable to this as well as other classes of cases, that where the Court has jurisdiction of the subject matter and of the person of the parties, its judgments, though erroneous, are valid until reversed on appeal, or vacated in some direct proceedings. (*Forbes* v. *Hyde, post.*) In the case of *Lake* v. *Joyce et al.*, there was no appeal, or other proceeding to vacate the judgment, and until so vacated it is binding on the plaintiff, as well as on the adult defendants.

It is claimed, however, that the plaintiff had no interest at the date of the judgment in *Lake* v. *Joyce et al.*—that her title subsequently vested, and was, therefore, not affected by the judgment in said action. Appellant's counsel, of course, cannot mean by this, that her title rests upon the conveyance of John and Caroline A. Joyce, of April 21, 1864, alone, independent of the covenant in the deed of separation between said parties; for, upon that hypothesis, the plaintiff only acquired such interest as her grantors had at the date of the conveyance. She could be in no better position than those under whom she claims, and it had already been adjudged that they had no title. The question was *res adjudicata* as to John and Caroline A. Joyce, and the plaintiff derives title from them and stands in privity with them. She must, then, connect herself with the covenants in the deed of separation,

and this, as we understand appellants' counsel, is claimed for her. In short, it is claimed that she had an interest under the deed, and at the same time, that she had not; that the instrument gave her rights which could not be defeated, provided she should attain majority; but as she might never attain majority, there was no interest vested which she could then set up, or be called upon to defend. But there is clearly no force in this position. If the deed gave her any rights whatever, whether inchoate, contingent or otherwise, which might ultimately be perfected, it served as the basis of a claim which might cloud the title to the real estate, and become the subject of judicial investigation, under section two hundred fifty-four of the Practice Act. One of the counsel, indeed, claims that the mother in fact held the legal title, and that the equitable title was all the time in the plaintiff. The covenant is that "she (the mother) will hold the lot now owned by her on Stockton street for the joint benefit of herself and children, using only the rents, issues and profits thereof for the benefit of herself and children; and that she will convey one third of the said lot to each of said children, Augusta and Helen Frances, when they shall respectively become of age." This does not purport to be a conveyance to the children to take effect when they should become of age, but a covenant to hold for the joint benefit of herself and children, using the rents and profits for the joint benefit of all, and when the two children should respectively become of age to convey to each one third, the other third remaining to the mother. Clearly, so far as this instrument discloses any interest at all, the whole title, both legal and equitable, was in the mother and children, and constituted such a basis of claim as they were bound to set up, and as might have been protected by the judgment of the Court, if found valid, in the case of *Lake* v. *Joyce et al.* In *Head* v. *Fordyce*, 17 Cal. 151, the Court in speaking of the nature of the adverse claim to title which a party in possession is entitled to have determined and quieted under section two hundred fifty-four, says: "The statute giving this right

of action to the party in possession, does not confine the remedy to the case of an adverse claimant setting up a legal title, or even an equitable title, but the Act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an *outstanding title* already held or to grow out of the adverse pretension. The plaintiff has a right to be quieted in his title whenever any claim is made to real estate of which he is in possession, the effect of which claim might be litigation or a loss to him of the property."

The case at bar is clearly within the provision as thus construed, and we have no doubt of the correctness of the construction. All the parties having or claiming any interest, legal, equitable, absolute or conditional, vested or contingent, under the deed of separation, were parties to the action of *Lake* v. *Joyce et al.*, and their claim was adjudged invalid. The judgment remains unreversed and in full force, and is a valid judgment so long as it stands, which cannot be collaterally impeached. The matters determined by it, therefore, are *res adjudicata* between the parties to this suit, and cannot be re-examined in this action.

It follows from these views that the learned Judge of the District Court erred in the conclusions of law drawn from the facts found, and that the judgment must be reversed.

Judgment reversed with directions to the District Court to enter judgment on the findings in favor of the defendants.